

Lorinda Meier Youngcourt
Trial Attorney, WA Bar 50988
Federal Defenders of Eastern WA & ID
10 North Post, Suite 700
Spokane, WA 99201
(509) 624-7606
Lorinda_Youngcourt@fd.org
Counsel for Rebecca Jo Wiklund

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

The Honorable Judge Rosanna Malouf Peterson

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>REBECCA JO WIKLUND,<br><br>    Defendant. | Case No. 2:19-CR-213-RMP<br><br>**DEFENDANT'S SENTENCING MEMORANDUM**<br><br>ORAL ARGUMENT – SPOKANE<br>WEDNESDAY, JUNE 23, 2021 @ 10:00 AM |

DEFENDANT'S SENTENCING MEMORANDUM - 1

**Table of Contents**

I. Introduction ................................................................................................... 3

II. Background .................................................................................................. 4

    A. Becky's lifetime of trauma. ................................................................... 4

    B. Becky's survival skills are focused on family ....................................... 6

    C. Becky's law abiding life ........................................................................ 7

    D. Becky's financial situation .................................................................... 8

    E. Becky's investigative and post-arrest conduct ...................................... 9

III. Discussion .................................................................................................. 10

    A. A time served sentence reflects the motive – family loyalty – behind Becky's crime. ................................................................................................................. 10

    B. A sentence to time-served and five years of supervised release is the appropriate penalty for Becky's actions. .................................................... 11

    C. Five years of supervised release with required mental health counseling will suffice to ensure public safety. ................................................................... 12

## I.   Introduction

REBECCA JO "BECKY" WIKLUND pled guilty to distributing 50 grams or more of pure methamphetamine in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(viii). She requests the Court impose the following sentence:

(1) A custody period of time served;

(2) 5 years supervised release;

(3) No restitution;

(4) Waiver of any fine; and

(5) A $100 special penalty assessment.

Becky is 61 years old and has zero criminal history points. Despite a life filled with trauma and loss,[1] she has generally led a law-abiding life outside of this "single act[] of aberrant behavior"[2] prompted by a perverse sense of family loyalty grounded in her post-traumatic stress and major depressive disorders[3].

---

[1] Ms. Wiklund requests the Court incorporate into this Sentencing Memorandum Exhibit A – Psychological Evaluation and Exhibit B – Social History, filed under seal at ECF Nos. 57-1 and 57-2 respectively, as exhibits to her Objection to Preliminary Presentence Report and Motion for Departure, ECF No. 53].

[2] U.S. Sentencing Guidelines Manual § 1A1.4(d) [Probation and Split Sentences] (2018).

[3] ECF No. 57-1, p. 13 (Psychological Evaluation).

DEFENDANT'S SENTENCING MEMORANDUM - 3

## II.    Background

### A. Becky's lifetime of trauma.

Becky's 61 years have been fraught with violence and loss. She grew up surrounded by violence. Her mother suffered an assault by her father while Becky was in the womb.[4] Becky was sexually abused, first by her uncle, when she was seven or eight years old,[5] and later by one of her mother's partners.[6] Her mother was "an associate of the Bandidos Motorcycle Club"[7] and the family lived in the clubhouse. At age eight, Becky witnessed a shooting in her own home.[8] On another occasion, Becky's caretaker shot a man through his car windshield, striking him in the shoulder. As he exited the car, he was shot again in the leg.[9] On another occasion, Becky found her mother lying on the couch "beaten and bloodied beyond recognition."[10]

When her 14-year-old cousin, Elizabeth Marks, was raped, murdered, and dumped in the Spokane River, it was Becky, age 23, who met with detectives and

---

[4] ECF No. 57-2, p. 2.
[5] ECF No. 57-2, p. 3.
[6] ECF No. 57-1, p. 3; ECF No. 59, p. 10, ¶ 58.
[7] ECF No. 59, p. 10, ¶ 58.
[8] ECF No. 57-1, p. 3; ECF No. 57-2, p. 4.
[9] ECF No. 57-2, p. 4.
[10] ECF No. 57-1, p. 3.

identified jewelry from her cousin's body.[11]  Elizabeth Marks and her friend, Rhonda Rima, were victims of the serial killer Martin Lee Sanders.[12]

Becky's first husband and the father of her oldest son was convicted of raping a deaf/mute disabled female neighbor, leading to their divorce.[13]  Her second husband was also a violent man, suspected of murdering a family friend.[14]  He was extremely controlling and threatened her by shooting guns off next to her head and striking her legs with a bull whip.[15]  While Becky left both of her husbands, the ending of a marriage is a significant loss, perhaps more complicated by the reasons Becky was forced to end her marriages.[16]

Tom Roullier, the father of Becky's second son, Sean Roullier,[17] abused her. He liked to choke her and have her beg for help.[18]  When Becky discovered him in

---

[11] ECF No. 57-2, p. 4; ECF No. 59, p. 11, ¶ 63.
[12] *Prisoner Suspect in Rape, Slayings*, Seattle Times (Mar. 14, 1990), available at https://bit.ly/3gvPU78; *Suspected or Convicted Serial Killers in Washington,* Seattle Post Intelligencer (Mar. 13, 2011), available at https://bit.ly/3pMcNrp.
[13] ECF No. 57-2, p. 5; ECF No. 59, p. 10, ¶ 61-62.
[14] ECF No. 57-2, p. 5.
[15] ECF No. 57-1, pp. 4-5; ECF No. 57-2, p. 5; ECF No. 59, p. 10, ¶ 56-57.
[16] The American Institute of Stress, *The Holmes-Rahe Life Stress Inventory*, available at https://www.stress.org/holmes-rahe-stress-inventory (last visited Jun 11, 2021) (lists divorce as number two on the list of stressful life events).
[17] Becky's youngest son, Sean Roullier is married to Angela Rose Roullier.  Ms. Roullier made regular drug sales to the CI in this case.  Ms. Roullier asked Becky to hold drugs for the CI for delivery while the Roullier's were out of town.  ECF No. 59, pp. 4-5, ¶¶ 9-13.
[18] ECF No. 59, p. 11, ¶ 64.

DEFENDANT'S SENTENCING MEMORANDUM - 5

bed with another woman, he body-slammed her into a wall, causing an injury to her knee that required surgery.[19]

Staggering loss has defined Becky. She never had a relationship with her biological father.[20] When she was 12 years old, her mother was sentenced to prison for burglary, assault and drugs.[21] Four years later, Becky and her sister Shari hitch-hiked to Seattle in anticipation of their mother's release, believing they could stay with her at a halfway house. Instead they were homeless and slept on the streets in Pioneer Square for weeks.[22]

Her sister Shari, with whom she was closest, died from a brain aneurysm in 2003 and Shari's daughter died in 2019 from a brain injury.[23] Becky's brother Bill died in 2016 from sepsis and her brother David died in 2017 from a drug overdose.[24]

Most recently Becky lost her beloved Rottweiler.[25]

### B. Becky's survival skills are focused on family

Becky suffers from post-traumatic disorder and depression.[26] Family means everything to her. She identifies herself as the glue holding her family—what's left of

---

[19] ECF No. 59, p. 11, ¶ 64.
[20] ECF No. 57-1, p. 2; ECF No. 57-2, p. 2.
[21] ECF No. 57-1, p. 3; ECF No. 59, p. 10, ¶ 58.
[22] ECF No. 57-1, p. 2; ECF No. 57-2, p. 4; ECF No. 59, p. 10, ¶ 59.
[23] ECF No. 57-1, p. 4.
[24] *Id.*; ECF No. 59, p. 11, ¶ 67-68.
[25] ECF No. 57-1, p 9 (describing a dissociative experience while digging the dog's grave in the dark while it rained).
[26] ECF No. 57-1, p. 10.

it—together. Because family is so precious to her, she avoids conflict with her relatives.[27] Psy.D. Robert Cosby who evaluated Becky, opines:[28]

> As a result of her upbringing, Ms. Wiklund developed a strong disposition, nurturing attitude, and profound family loyalty. She reported always putting her family's needs first and explained this as her life's purpose. In many ways, these characteristics were adaptive to protect her from additional threats. On the other hand, Ms. Wiklund avoided conflict with her family and learned through experience that tragic events could occur when those closest to her became upset. Ms. Wiklund's troubled background and family's criminal involvement likely distorted her notion of loyalty and the meaning of being a helpful family member. The root cause of Ms. Wiklund's alleged involvement with her family is twofold: First, Ms. Wiklund has a maladaptive perspective on what it means to support her family. Second, she has inadequate coping skills to manage her reactions to stress and familial discord.

It is an intrinsic part of Becky's psychological make-up that when asked in September of 2019 to do a favor for her son's wife, Becky would say "yes" without question.

### C. Becky's law abiding life

Often, life experiences like Becky's lead to frequent and numerous contacts with the criminal legal system.[29] In fact, Becky's mother and other family members have been incarcerated throughout her life.[30] As a testament to her moral code and internal strength, Becky has accumulated zero criminal history points during her 61

---

[27] ECF No. 57-1, p. 5, 10.
[28] ECF No. 57-1, p. 13.
[29] James A. Reasvis, Psy.D., *Adverse Childhood Experiences and Adult Criminality: How Long Must We Live before We Possess our Own Lives?*, Perm J. 17(2): 44-48 (2013)(childhood adversity is associated with adult criminality), available at https://bit.ly/2TV01Lb (last visited Jun 11, 2021).
[30] ECF No. 57-1, p. 4.

DEFENDANT'S SENTENCING MEMORANDUM - 7

years. Her last criminal legal system contact occurred 14 years ago for "driving without privileges;" a charge which was dismissed.[31]

### D. Becky's financial situation

Becky supports herself through small social security disability payments and food stamps. She has no assets.[32] She lives in a rented trailer in the Hillyard neighborhood.

*Becky's rented trailer via Google satellite photo, available at https://bit.ly/2S3F28D (last visited Jun 16, 2021).*



---

[31] ECF No. 59, p. 9, ¶ 54,
[32] ECF No. 59, p. 13, ¶ 87.

DEFENDANT'S SENTENCING MEMORANDUM - 8

Hillyard, located in the northeast corner of Spokane, is a neighborhood known for its high crime rate.[33] Not surprisingly, Hillyard (sometimes referred to as "Dog Town") has one of Spokane's highest poverty rates hovering just below 30%.[34] Becky is part of the 30%.

### E. Becky's investigative and post-arrest conduct

On October 22, 2019, DEA officers "breached the front door" of Becky's residence, searched and recovered no drugs.[35] Becky arrived at her home while agents were on her property.[36] She was immediately cooperative and signed consent to search documents for her car and cellphone. When asked, she told the agents there was a user amount of methamphetamine in the trunk of her car.[37]

Becky first appeared by summons for these proceedings on January 7, 2020. The government withdrew its request for detention and she was released on special conditions.[39] Becky has successfully remained on pre-trial release for over 17 months.

---

[33] Area Vibes, *Most Dangerous Neighborhoods in Spokane, WA*, https://bit.ly/3gyiGFq (last visited Jun 16, 2021) (Hillyard neighborhood has the second highest crime rate with 83% more crime than Spokane as a whole).
[34] Thomas Clouse, *Hillyard*, The Spokesman-Review (Sep 24, 2017), available at https://bit.ly/2S4KTuk.
[35] Government provided discovery, Bates 00000071.
[36] *Id.*
[37] *Id.* Agents also searched Becky's oldest son's residence (a camper) in her backyard where they seized paraphernalia and a brown vile containing an unknown substance.

[39] ECF No. 9

DEFENDANT'S SENTENCING MEMORANDUM - 9

**III.    Discussion**

A sentencing court should impose only what is necessary to achieve the Sentencing Reform Act's goals nothing more. *U.S. v. Ressam*, 679 F.3d 1069, 1089 (9th Cir. 2012) ("A substantively reasonable sentence is one that is 'sufficient, but ***not greater than necessary***'), quoting 18 U.S.C. §3553(a) (emphasis added). Once calculated, the courts "may not presume that the Guideline range is reasonable," *Gall v. U.S.*, 552 U.S. 38, 50 (2007); but must instead focus on deterrence, retribution, incapacitation, and rehabilitation. *See,* 18 U.S.C. §3553(a)(1), (2)(A)-(D); *see also Rita v. U.S.*, 551 U.S. 338, 366 (2007) (Stevens, J., concurring) (noting guidelines are "truly advisory").

Courts are "free to make [their] own reasonable application of the §3553(a) factors, and to ***reject*** (after due consideration) the advice of the Guidelines." *Kimbrough v. U.S.*, 552 U.S. 85, 113 (2007) (Scalia, J., concurring) (emphasis added).

### A. A time served sentence reflects the motive – family loyalty – behind Becky's crime.

At sentencing, a defendant's motive for committing an offense matters. *Wisconsin v. Mitchell*, 508 U.S. 476, 485 (1993) (noting a "defendant's motive for committing the offense is one important factor"). Becky was only doing a favor for her daughter-in-law who was out of town. She did not personally benefit from her role in Ms. Roullier's drug business other than by maintaining her family relationships.

DEFENDANT'S SENTENCING MEMORANDUM - 10

Becky has never been a drug dealer. She has used methamphetamine in the past. Her first experience with methamphetamine was as a teen when her mother gave it to her to "help with her weight." But Becky has not used methamphetamine since January of 2020 when her trailer was searched by agents. Agents recovered no drugs in Becky's home.

### B. A sentence to time-served and five years of supervised release is the appropriate penalty for Becky's actions.

Becky simply held a package of drugs at the request of her daughter-in-law Angela Roullier and handed them to a confidential informant (CI). The CI made all the sale arrangements with Roullier. The CI handed Becky money owed Roullier. Roullier texted the CI to confirm the amount of money the CI left with Becky for Roullier.

Angela Roullier took advantage of her family relationship with Becky and used her like a free babysitter. However, Becky accepts responsibility for her actions. She pled guilty to the charged offense.

Five years of supervised release with required mental health counseling will deter Becky from being taken advantage of in the future. It will also give her the tools to say "no" and withstand the fear of losing another family member.

### C. Five years of supervised release with required mental health counseling will suffice to ensure public safety.

The public does not need to be protected from Becky Wiklund. Becky needs to be protected from her desire to keep her family together. This can easily be accomplished by a supervised release condition of psychological treatment consistent with the recommendations of Robert L. Cosby, Psy.D.[40]

Dated: June 16, 2021

                                       */s/ Lorinda Meier Youngcourt*
                                       Lorinda Meier Youngcourt

### Certificate of Service

I certify that on June 16, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which will notify counsel of record.

                                       */s/ Lorinda Meier Youngcourt*
                                       Lorinda Meier Youngcourt
                                       Federal Defenders of Eastern WA & ID
                                       10 North Post, Suite 700
                                       Spokane, WA 99201
                                       (509) 624-7606
                                       Lorinda_Youngcourt@fd.org

---

[40] ECF No. 57-1.